Berry *v.* Hoffman, Appellant.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Ralph B. Umsted,* with him *Howard M. Kuehner,* for appellant.

*Warren S. Spalding,* for appellee.

OPINION BY PARKER, J., January 29, 1937:

This is an appeal from a final decree of Court of Common Pleas No. 1 of Philadelphia restraining Robert C. Hoffman, trading as Milo Bar Bell System, from "printing, publishing, selling and disposing of any copy of the book entitled 'Your Physique—and Its Culture' and from advertising the publication or sale of the same," and ordering an accounting for copies of books sold and delivered by him.

For a number of years the plaintiff, Mark H. Berry, an expert in physical culture and a writer, had been employed by Milo Bar Bell Company, a corporation (hereinafter referred to as Bell Company), and during his employment he had written a number of books which were published by Bell Company and were the

property of that company, and had also prepared monthly articles for a magazine published by the same organization. Plaintiff testified that he proposed to the Bell Company to write a new work to be known as "Your Physique and Its Culture"; that Bell Company was having some financial difficulties and was compelled to reduce plaintiff's salary, and as a result an oral agreement was made between that company and plaintiff whereby the book would be published on a royalty basis and advertised by the company. An important feature of the proposed book was a large number of illustrations which were to be furnished by the author. Photographs were made by plaintiff and delivered by him to a manufacturer who made the cuts that were to be used in the publication. The manuscript for the flat pages had been delivered to the Bell Company and a number of such pages without the illustrations had been printed when, on April 29, 1935, Bell Company filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. The defendant denies that plaintiff reserved any rights in the published book by way of royalties or otherwise and asserts that plaintiff was an employee of the Bell Company on a salary, that in such capacity the work on the book in question was done by him for the company, and that the book was therefore its property.

The plaintiff became receiver and trustee of the bankrupt estate and, about May 27, 1935, at a sale of the assets of the bankrupt, the defendant purchased all the right, title and interest of the bankrupt in and to the flat pages of the book that had been printed and, without knowledge of the author, procured from the woodcutter the illustrations that had been made for plaintiff and published and sold a completed work under the contemplated title. There was a dispute as to whether the auctioneer sold "Your Physique and Its Culture." It is undisputed that such title was not included in the

listing for the sale by the auctioneer, but we are of the opinion that a finding of the referee to which we will refer, that it was included in the sale, cried, and sold by the auctioneer, is conclusive on the state courts. However, we regard this as of little importance as it was only the right, title and interest of the bankrupt which was sold.

The findings of fact by the chancellor having been approved by the court en banc have all the force and effect of a finding by a jury and as there is evidence to support the findings they are conclusive on appeal. The facts found by the chancellor and which are relevant to the questions involved in this appeal were substantially as follows: "The plaintiff, Mark H. Berry, is the author of the manuscript used in the book entitled 'Your Physique.' In 1934, the plaintiff entered into a contract with Daniel G. Redmond, President of the Milo Bar Bell Co., Inc., in which the Milo Bar Bell Co., Inc., agreed to publish said book, and after deducting the costs of publication to pay the said Berry a royalty on all future sales. Redmond and the Milo Bar Bell Co., Inc., went into bankruptcy before the book had been bound or published, but after it had been printed in flat page form. The Milo Bar Bell Co., Inc., returned the plaintiff's manuscript to him as the pages were printed. Even with the title 'Your Physique' written into the catalogue and cried at the time of sale, it would have only conveyed such right as the Receiver possessed. The defendant has advertised, published and sold 'Your Physique' as his own property. The cuts used for printing the illustrations for 'Your Physique' were procured by the defendant from a manufacturer, but without the knowledge or consent of the plaintiff. The publication and sale of 'Your Physique' by the defendant has never been consented to by the plaintiff."

We are all of the opinion that the case was correctly decided by the court below. The property rights in a

literary production before publication are exclusively in the author: *Ferris v. Frohman,* 223 U. S. 424, 32 S. Ct. 263; 13 C. J. 973, et seq. The federal copyright law (Act Mar. 4, 1909, c. 320, §2, 35 Stat. 1076, 17 USCA §2) recognized this right of an author by providing: "Nothing in this title shall be construed to annul or limit the right of the author or proprietor of an unpublished work, at common law or in equity, to prevent the copying, publication, or use of such unpublished work without his consent, and to obtain damages therefor." Bankruptcy terminated the contractual relationship between plaintiff and the Bell Company, since the receiver or trustee of the bankrupt did not elect to assume performance of the contract found by the trial court to exist, even though we assume, for the sake of argument only, that the contract in question was assignable *(Central Trust Co. v. Chicago Auditorium Assn.,* 240 U. S. 581, 36 S. Ct. 412). The defendant, purchaser of the right, title and interest of the bankrupt disavowed the contract.

The appellant attacks the decree entered upon three grounds, to wit, (1) that the equity court had no jurisdiction, as the issue had previously been adjudicated in another court; (2) that the plaintiff is estopped by his conduct; and (3) that any rights that the plaintiff had in "Your Physique" were lost by an alleged publication of the work.

(1) The defendant first argues that the equity court did not have jurisdiction since the right of publication had been previously decided by the referee in bankruptcy adversely to the plaintiff. The facts will not support this contention. On the day preceding that on which this bill was filed, defendant, who had purchased certain assets at the receiver's sale, presented a petition to the referee in bankruptcy alleging that the auctioneer acting for the receiver had cried and sold, inter alia, "all the receiver's right, title and interest in

and to publication and copyrights of the following: ......'Your Physique'," and that some question had arisen as to what had been sold and particularly as to whether "Your Physique" had been included in the sale. After hearing, the referee found "that the petitioner purchased from the bankrupt estate the book entitled 'Your Physique' and that as between the petitioner [defendant] and the bankrupt estate title to the same is in the petitioner." This finding determined only that "Your Physique" was included among the items sold. It did not pretend to determine the title as against anyone but the bankrupt estate for those are the plain words of the finding. The referee could not have done more as all that was claimed to have been sold was the right, title and interest of the bankrupt. As between this adjudication by the referee and the matter now before the state courts, there was neither identity of the thing sued for or subject matter of the suit, nor identity in quality of the persons involved. It follows that the principle of res judicata has no application: *Baker v. Small,* 17 Pa. Superior Ct. 423.

(2) It is next urged by the appellant that the plaintiff was estopped by his conduct from asserting title to the book. This contention is based on the fact that the plaintiff was the receiver and trustee in bankruptcy. The chancellor in this equity proceeding found the following fact: "The plaintiff neither said nor did anything to mislead the defendant concerning the plaintiff's interests in the unpublished book." It follows that if appellant's contention is to be sustained it must be by virtue of some legal conclusion that arises from the evidence. An examination of such evidence fails to disclose any such ground. When the receiver offered for sale the right, title and interest of the bankrupt, the purchaser was put upon notice that no representations were made as to the extent of the title. It would be necessary under the circumstances here present for

the purchaser to show affirmatively that representations were made by the present plaintiff and that he relied and acted on such representations. There is no such evidence.

(3) Finally, it is argued by the appellant that the common law rights of the plaintiff were lost by publication. This argument is based on the assumption that the book was published, but the facts will not support such hypothesis. We agree that if it was published, the plaintiff is not entitled to the decree entered: 13 C. J. 974. The facts are that the author had merely delivered to the publisher, the Bell Company, the manuscript for the flat pages, so called, but the photographs or cuts for the illustrations had not been so delivered when the Bell Company became bankrupt and abandoned work on the publication of the book. These photographs were prepared from poses, and skill and time were required to obtain results which would explain or illustrate the text. The completed work had not even been delivered to the publisher. Prior to bankruptcy the Bell Company was engaged in printing a part of the book, but the work had not yet been dedicated to common use by the general public.

Every communication of knowledge of the contents of a literary composition is in a sense a publication. However, the cases dealing with copyright early recognized a distinction between a general and a limited publication. When the communication is to a select number upon condition, express or implied, that it is not intended to be thereafter common property, the publication is then said to be limited. In employing the word "publication" in the copyright law a general publication is meant as opposed to a limited one: *Keene v. Wheatley*, 14 Fed. Cases 180, 198. In *American Tobacco Co. v. Werckmeister*, 207 U. S. 284, 28 S. Ct. 72, 77, the applicable rule is quoted with approval from Slater on the Law of Copyright and Trade Marks as

follows: "It is a fundamental rule that to constitute publication there must be such a dissemination of the work of art itself among the public as to justify the belief that it took place with the intention of rendering such work common property." An author cannot be justly deemed to have intended to part with his ownership by depositing the manuscript in the possession of a third person or by procuring a third person to print the work with the intention of giving it to the public at some future time. Such acts are deemed strictly limited in point of right, use and effect to the very occasions expressed or implied. They are not construed as a general gift or authority to use the work for any purpose of profit or publication to which the third person may choose to devote them. "The test is whether there is or is not such a surrender as permits the absolute and unqualified enjoyment of the subject matter by the public or the members thereof to whom it may be committed": *Werckmeister v. Amer. Lith. Co.*, 134 Fed. 321, 68 L. R. A. 591, 596. The facts of this case do not disclose any such general publication as would defeat the author's common law right of property in the book.

The decree of the court below is affirmed at the cost of the appellant.